Oscar M. Orozco-Botello (SBN 313104)
oscar.orozco-botello@us.dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400, North Tower
Los Angeles, California 90067
T. 310.595.3000 | F. 310.595.3300

Tamar Y. Duvdevani (*Pro Hac Vice*)
tamar.duvdevani@us.dlapiper.com
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
27th Floor New York, NY 10020-1104
T. 212.335.4799

Jane W. Wise (*Pro Hac Vice*)
jane.wise@us.dlapiper.com
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
T. 202.799.4149

*Attorneys for Counterclaimant Home Depot U.S.A. Inc. (incorrectly named The Home Depot, Inc.)*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| ALSA REFINISH LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>THE HOME DEPOT, INC., a Delaware corporation,<br><br>Defendant. | Case No.: 2:23-CV-09965-SVW-MAR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HOME DEPOT U.S.A., INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>*[Filed Concurrently with Notice of Motion and Motion; Statement of Uncontroverted Facts; Exhibit Index; Declarations of Robert Glass and Oscar M. Orozco-Botello; and [Proposed] Order]* |
| HOME DEPOT U.S.A. INC., a Delaware corporation,<br><br>Counterclaimant,<br><br>v.<br><br>ALSA REFINISH LLC, a California Limited Liability Company,<br><br>Counter-Defendant. | Hearing Date: March 24, 2025<br>Hearing Time: 1:30 pm PT<br>Courtroom: 10A, 10th Floor |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL BACKGROUND .................................................................2

    A.    Home Depot ................................................................................2

    B.    Alsa and Its Purported Rights. .....................................................3

    C.    Alsa Produced No Credible Evidence of Its Revenues. .....................4

    D.    The Parties' Past Vendor Relationship. ............................................4

    E.    Alsa Cannot Show Use of the Alsa Marks by Home Depot. ..............6

    F.    Alsa Has No Evidence of Consumer Confusion. ...............................7

III.  LEGAL STANDARD ...........................................................................8

IV.   HOME DEPOT IS ENTITLED TO SUMMARY JUDGMENT...................8

    A.    Alsa's Trademark Infringement Claim Based on a False Association Theory Fails as a Matter of Law. .....................................8

    B.    Alsa's Trademark Infringement Claims Fail as a Matter of Law. ......10

        1.    Alsa Does Not Own Registered Rights. ...................................10

        2.    Home Depot Does Not Use the Alsa Marks in Commerce. .....12

        3.    Home Depot is Entitled to Summary Judgment Because Alsa Cannot Establish a Likelihood of Confusion. ..................13

            a.    The Relevant Consumers Are Professionals, and the Goods are Expensive. ......................................................14

            b.    Home Depot Search Results Are Clearly Labeled. ........15

            c.    The Other Likelihood of Confusion Factors Favor Home Depot. .................................................................17

                i.    The Weakness of Alsa's Marks Favors No Confusion ...........................................................17

                ii.    There is No Evidence of Actual Confusion ........18

                iii.    The Marketing Channels Are Irrelevant .............19

                iv.    Home Depot's Intent..........................................19

    C.    Alsa's Related Claims Likewise Fail as a Matter of Law. ................20

i

D.    Alsa Cannot Seek Equitable Disgorgement of Home Depot's Profits. ........................................................................................20

E.    Alsa is Not Entitled to Any Other Form of Damages........................21

V.    CONCLUSION ........................................................................................22

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aliign Activation Wear, LLC v. lululemon athletica Canada Inc.*, 2021
WL 3117239 (C.D. Cal. June 7, 2021)...................................................................17

*Alsa Refinish LLC v. Walmart, Inc.*,
2024 WL 3914512 (C.D. Cal. July 31, 2024) ..............................................*passim*

*Am. Int'l Grp., Inc. v. Am. Int'l Bank*,
926 F.2d 829 (9th Cir. 1991)..................................................................................18

*AMF Inc. v. Sleekcraft Boats*,
599 F.2d 341 (9th Cir. 1979).........................................................................14, 16

*Art Attacks Ink, Ltd. Liab. Co. v. MGA Enter. Inc.*,
581 F.3d 1138 (9th Cir. 2009)................................................................................11

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
174 F.3d 1036 (9th Cir. 1999)................................................................................18

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................................8

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
778 F.3d 1059 (9th Cir. 2015)................................................................................20

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*,
925 F. Supp. 2d 1067 (C.D. Cal. 2012)..................................................................12

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
618 F.3d 1025 (9th Cir. 2010).................................................................................19

*In Re Gen. Mills Ip Holdings II, LLC*,
124 U.S.P.Q.2d 1016 (T.T.A.B. 2017)....................................................................11

*Intel Corp. v. Hartford Accident & Indem. Co.*,
952 F.2d 1551 (9th Cir. 1991).................................................................................8

*Jack Russell Terrier Network v. Am. Kennel Club, Inc.*,
407 F.3d 1027 (9th Cir. 2005).................................................................................10

iii

*JUUL Labs, Inc. v. Chou*,
   557 F. Supp. 3d 1041 (C.D. Cal. 2021)........................................................ 10, 11

*Lerner & Rowe PC v. Brown Engstrand & Shely LLC*,
   119 F.4th 711 (9th Cir. 2024)........................................................ 8, 14, 15, 18

*Lindy Pen Co. v. Bic Pen Corp.*,
   982 F.2d 1400 (9th Cir. 1993).................................................................... 20, 21

*Maier Brewing Co. v. Fleischmann Distilling Corp.*,
   390 F.2d 117 (9th Cir. 1968)............................................................................ 20

*Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*,
   290 F. Supp. 2d 1083 (C.D. Cal. 2003)........................................................... 18

*Multi Time Mach., Inc. v. Amazon.com, Inc.*,
   804 F.3d 930 (9th Cir. 2015)..................................................................*passim*

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
   638 F.3d 1137 (9th Cir. 2011).................................................................*passim*

*Novalogic, Inc. v. Activision Blizzard*,
   41 F. Supp. 3d 885 (C.D. Cal. 2013)................................................................ 19

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*,
   718 F.2d 327 (9th Cir. 1983)............................................................................ 11

*Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*,
   354 F.3d 1020 (9th Cir. 2004)................................................................... 18, 19

*Pogrebnoy v. Russian Newspaper Distribution, Inc.*,
   289 F. Supp. 3d 1061 (C.D. Cal. 2017)............................................................ 21

*Punchbowl, Inc. v. AJ Press LLC*,
   2024 WL 4005220 (C.D. Cal. Aug. 22, 2024) ................................................. 18

*Quia Corp. v. Mattel, Inc.*,
   2011 WL 2749576 (N.D. Cal. July 14, 2011) .................................................. 22

*Rolex Watch, U.S.A., Inc. v. Michel Co.*,
   179 F.3d 704 (9th Cir. 1999)........................................................................... 20

*Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*,
   265 F. Supp. 3d 1013 (N.D. Cal. 2017)........................................................... 18

iv

*Scott v. Harris*,
        550 U.S. 372 (2007) ...............................................................................................8

*Stark v. Diageo Chateau & Est. Wines Co.*,
        907 F. Supp. 2d 1042 (N.D. Cal. 2012)................................................................17

*Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.*,
        601 F.2d 1011 (9th Cir. 1979) ..............................................................................11

*Tekoh v. Cty. of L.A.*,
        270 F. Supp. 3d 1163 (C.D. Cal. 2017)................................................................13

*Toho Co. v. Sears, Roebuck & Co.*,
        645 F.2d 788 (9th Cir. 1981) ................................................................................19

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
        610 F.3d 1171 (9th Cir. 2010) ........................................................................14, 18

*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*,
        419 F.3d 925 (9th Cir. 2005) ................................................................................10

*Zamfir v. Casperlabs, LLC*,
        528 F. Supp. 3d 1136 (S.D. Cal. 2021) ................................................................10

**Statutes**

11 U.S.C. § 1125(a) ........................................................................................................10

15 U.S.C. § 1057(b) ........................................................................................................10

15 U.S.C. § 1115(a) ........................................................................................................10

**Other Authorities**

Fed. R. Civ. P. 11...............................................................................................................5

Fed. R. Civ. P. 12.........................................................................................................1, 9

Fed. R. Civ. P. 56(a) .........................................................................................................8

## I.      **<u>INTRODUCTION</u>**

To Alsa, the facts underlying its trademark infringement and related claims are malleable.  Alsa alleged that Home Depot was never authorized to sell its products, but discovery has revealed beyond any dispute that Alsa was a Home Depot online vendor from 2013 until 2019, evidence that this Court noted was "convincing" but that it Could not previously consider on a Rule 12 motion.  Alsa asserted that the inactive Home Depot landing page for Alsa products was an act of willful infringement, but discovery revealed that Alsa had authorized Home Depot to create the page pursuant to the parties' Supplier Buying Agreement, which Alsa previously claimed it did not enter.  Alsa alleged that it would never want to be associated with Home Depot, yet the evidence establishes that Alsa tried to expand its products even further into the retailer, both online and in brick-and-mortar locations, while Alsa's owner Isaac Banoun sang Home Depot's praises.

To Alsa, facts don't matter; what matters is reviving its flailing business by suing a company with significant revenues and hoping Alsa can secure a windfall.  Alsa admitted as much when its owner testified that "Alsa only sues businesses that it knows ha[ve] significant revenues" that "can pay a judgment." Home Depot's Statement of Uncontroverted Facts ("SUF") 110.  Home Depot is only Alsa's latest mark; Alsa unsuccessfully sued Walmart alleging almost identical claims, which this Court dismissed with prejudice on summary judgment.  *Alsa Refinish LLC v. Walmart, Inc.*, 2024 WL 3914512 (C.D. Cal. July 31, 2024) ("*Walmart*").

Alsa's claims fail as a matter of law for multiple reasons, even beyond the reason the Court already determined to be dispositive, that Alsa was a Home Depot vendor and therefore no claim of false association can exist.  Dkt. 60 at 13 n.1.  First, Alsa has not offered evidence that any of the asserted trademarks are valid.  Second, even if it did, Alsa lacks any credible evidence to show that Home Depot used Alsa's asserted trademarks in connection with the sale of goods or services.  Third, there is no likelihood of confusion and, indeed, the parties have coexisted for many years

1

without any consumer confusion.  Fourth, Alsa has no evidence of any injury attributable to its claims and admitted that the harm it alleges in this lawsuit stems from Home Depot's decision to terminate Alsa as a vendor—not consumer confusion. Where, as here, there are no genuine disputes of material facts, and the undisputed evidence conflicts with Alsa's claims, summary judgment is appropriate.  Home Depot thus respectfully requests that the Court grant Home Depot's motion for summary judgment.

## II.    FACTUAL BACKGROUND

### A.    Home Depot.

Home Depot, founded in 1978, is a home improvement retailer in both brick-and-mortar locations and through its website, homedepot.com (the "Home Depot Website").  SUF 1-3.  Among the millions of products Home Depot offers is a wide assortment of paints and paint products.  SUF 4.  The paint products Home Depot offers vary widely in price and purpose.  SUF 5-6.  For example, Home Depot offers interior and exterior home paints, deck paint or stain, pool paint, and specialty paints like spray paint products.  SUF 7.  The majority of paint products Home Depot sells are third-party brands like Behr, Rust-Oleum, and Glidden.  SUF 8-9.

For all relevant time periods, to sell products on Home Depot's Website, Home Depot required each of its third-party vendors to enter into a Supplier Buying Agreement ("SBA").  SUF 10.  The SBA governs all purchase orders for vendor product, the parties' relationship, and sets forth the parties' respective obligations. SUF 11.  After an online vendor agrees to the terms of the SBA, the vendor works with Home Depot to list the vendor's products for sale on the Home Depot Website. SUF 12.  Customers can browse Home Depot's merchandise or search for specific brands and products using the search bar located at the top of the webpage next to Home Depot's well-known logo, shown below.  SUF 15-16.

2



### B. Alsa and Its Purported Rights.

Alsa sells "expensive" specialty paint products, including chrome paint, that range in price from $79 to $5,999 on its website <alsacorp.com>. SUF 19-22. Alsa's primary consumers are professional or specialist painters. SUF 23, 28. Alsa specializes in chrome paints that are used primarily for painting cars. SUF 29.

Alsa claims it owns the following trademarks: "Alsa," "Alsa Chrome Paint," "Alsa Easy Chrome," "Easy Chrome," and "Alsa Refinish" (collectively, the "Alsa Marks") in connection with its chrome-colored paints. Dkt. 25 ¶ 11; SUF 29. Alsa does not know when it made first use of any of the Alsa Marks. SUF 39. Alsa also does not have evidence of the nature and extent of such use or any facts to support that relevant consumers recognize any of the Alsa Marks as a brand. SUF 40. Alsa's owner selected the name Easy Chrome for its chrome paint because "it's easy to apply and it looks like chrome," and acknowledges that "easy" and "chrome" are generic terms. SUF 42-46. Alsa sells its products only online. SUF 18.

Records regarding Alsa's use of the Alsa Marks are sparse. Alsa concedes that it spent no more than a few thousand dollars on advertising the Alsa Marks since

3

2019, when Home Depot's alleged infringement began.  SUF 47-54.  Before 2019, Alsa claims to have spent $500,000 promoting the Alsa Marks at a single automotive aftermarket show called SEMA in 2007, with $350,000 of this expenditure relating to the shows attendance and one sign made for that show.  SUF 55-57.  The remaining $150,000 of that "promotional" expenditure was spent on renting out a night club for Alsa to hang out with rappers.  SUF 58.  But no documents show these alleged expenditures.  SUF 54.  Alsa has no evidence of who attended the trade show, which of the Alsa Marks appeared on the sign, how many customers saw the single sign, or what impact, if any, the event had on consumers recognizing any of the Alsa Marks as a trademark.  SUF 59-63.  Alsa has not employed even a single salesperson since at least 2016. SUF 64.

### C.      Alsa Produced No Credible Evidence of Its Revenues.

Alsa refused to provide any documents that would show its annual revenue, costs, profits, cash flow, or balance sheet, claiming that it does not have such records.  SUF 66-67.  Although Alsa produced a few bank statements, its corporate designees were unprepared and unable to answer any questions concerning Alsa's revenues for products bearing the Alsa Marks.  SUF 68.  Alsa admitted that it has not attempted to ascertain its quarterly sales for each year.  SUF 69.

### D.      The Parties' Past Vendor Relationship.

Alsa now admits that it lied when it represented to the Court that it "never intended to sell its products through [Home Depot's] website or stores."  SUF 75-76.  As a Home Depot vendor, Alsa sold its products on the Home Depot Website from 2013 to 2019 ("Vendor Period").  SUF 77-82.  In 2013, Alsa agreed to the terms of the SBA to sell Alsa paint products on the Home Depot Website.  SUF 81.  During the Vendor Period, Alsa authorized Home Depot to sell Alsa products on the Home Depot Website and display the Alsa Marks on landing pages for the Alsa products. SUF 79.  Alsa admits that it is not aware of any consumer confusion arising between Alsa and Home Depot during the Vendor Period.  SUF 85.

4

During the Vendor Period, Alsa frequently communicated with Home Depot about selling its products through the Home Depot Website and even tried to expand its products into Home Depot's brick-and-mortar stores.  SUF 90.[1]  However, Alsa's products performed poorly, selling less than $180,000 during the six-year Vendor Period.  SUF 91.  Alsa's weak sales and refusal to comply with the SBA's requirements ultimately led to the end the vendor relationship in 2019.  SUF 91-93.  Once the relationship ended, Home Depot immediately discontinued the sale of Alsa's products on the Home Depot Website, and product landing pages created for Alsa's products during the Vendor Period were made inactive, offering no products for sale ("Inactive Pages").  SUF 94-96.  An example of an Inactive Page is shown below.



Dkt. 25-24; SUF 96.  Inactive Pages could be accessed only by using a third-party search engine (like Google)—and only if a user specifically typed the term "Home

---

[1] Home Depot provided copies of such communications to Alsa in a Rule 11 letter dated May 9, 2024.  SUF 156.

5

Depot" into Google plus the name of an Alsa product—because the specific URL that was created during the Vendor Period had not been "de-indexed" by Google.[2]  SUF 97.  However, as shown in the image above, once Alsa was no longer a vendor, any user that followed an inactive URL from a Google search to Home Depot's Inactive Pages would not see any products available for sale.  Dkt. 25-24; SUF 96-99.

Alsa alleged without any support that it noticed a 90% decline in sales in 2019, after the vendor relationship with Home Depot ceased.  SUF 100-02.  Despite its allegedly declining sales, Alsa did not investigate any potential cause.  SUF 103-08.  However, when asked during deposition, Alsa attributed all the losses claimed in this lawsuit to the fact that it no longer sold paint via Home Depot, *not* due to any alleged infringement.  SUF 109 ("Q. You don't think there was any harm because Home Depot ended or Alsa ended the vendor relationship?  A. Yes, sir. There was major harm.  Q. Is that harm part of this lawsuit?  A. Yes.  Q. What portion of the damages that Alsa seeks is related to that harm?  A. All of it.").

**E.     Alsa Cannot Show Use of the Alsa Marks by Home Depot.**

Alsa's claims relate to search results on the Home Depot Website, which, like most retail websites, contains a search function.  Dkt. 25 ¶¶ 71-127; SUF 112-16.  After the Vendor Period, Home Depot did not sell any Alsa paint products, and Alsa does not claim that it did so.  SUF 94-95, 111-17.  If a user searched for "Alsa Easy Chrome" on the Home Depot Website, no products bearing the Alsa Marks appear in the results ("Alsa Searches").[3]  SUF 114.  A search for "Alsa Easy Chrome," (the heading merely reflects whatever search terms the user typed) shown below, features unrelated products like faucets and showerheads.  SUF 114.

---

[2]  The Court previously held that "Google search results do not constitute use of Plaintiff's marks by Defendant [and] cannot serve as the basis for trademark infringement."  Dkt. 60 at 8.

[3] Home Depot refers to the Inactive Pages and Alsa Searches collectively as the "Alsa Results."

6



A search of each of the Alsa Marks on the Home Depot Website likewise does not return any Alsa products.  SUF 111-17.  Instead, all search results are clearly labeled with the non-Alsa brand, product name and an image of the product.  SUF 111-17 (collecting screenshots).  None of the products shown in the Alsa Searches bear any Alsa Marks.  SUF 111-17.  Alsa provided no evidence that Home Depot sold any products labeled with the Alsa Marks after the Vendor Period.  SUF 118.

**F.    Alsa Has No Evidence of Consumer Confusion.**

Alsa has not provided evidence of a single instance of consumer confusion between Alsa and Home Depot.[4]  SUF 119.  Indeed, Alsa cannot point to a single consumer communication after the Vendor Period showing consumer confusion or to any sales lost as a result.  SUF 119-20.  Likewise, Alsa did not conduct a consumer survey or produce any expert report indicating consumers are likely to experience confusion or any false association between any of the Alsa Marks or Home Depot.  SUF 122.  Instead, Alsa claims that when no Alsa products show up in any Alsa Results on Home Depot's Website, customers will choose to buy from another, non-

---

[4] Alsa purported to identify two unauthenticated comments on third-party websites from 2017 and 2018.  SUF 120.  Neither comment evidences trademark confusion.

7

confusing brand instead, like Rust-Oleum.[5]  SUF 123.  But Alsa has no evidence that this ever occurred, nor does Home Depot.  SUF 119, 124.

### III.    LEGAL STANDARD

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Once the moving party presents sufficient evidence, "the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense."  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (citation omitted).

When the non-moving party's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, [the] court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("[A]n absence of evidence to support the nonmoving party's case" satisfies the burden on the moving party).  Courts are empowered to grant summary judgment in trademark cases when "there is no likelihood of confusion as a matter of law." *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 935 (9th Cir. 2015) ("*MTM*"); *Lerner & Rowe PC v. Brown Engstrand & Shely LLC*, 119 F.4th 711, 719 (9th Cir. 2024) (stating "we have not hesitated to affirm a grant of summary judgment."); *Walmart*, at *10 (granting summary judgment against Alsa).

### IV.    HOME DEPOT IS ENTITLED TO SUMMARY JUDGMENT

#### A.    Alsa's Trademark Infringement Claim Based on a False Association Theory Fails as a Matter of Law.

The Court dismissed from this action all theories of liability but for source confusion based on a false association relating to the Alsa Results.  *See* Dkt. 60 at 8

---

[5] Alsa acknowledges it has not experienced confusion with third-party paint brands sold by Home Depot, including Rust-Oleum.  SUF 125-30.

8

(finding Google search results "cannot serve as the basis for trademark infringement"). This Court held that on a Rule 12 standard, the Alsa Results could plausibly indicate a "false association, as Plaintiff alleges that it 'never intended to sell products through Defendant's website or stores' and 'believes that Defendant has never sold Plaintiff's products on Defendant's website or stores.'" *Id.* at 13. The Court then "acknowledged that" Home Depot's "counterclaims supply rather convincing evidence that Plaintiff contracted with Defendant to sell Plaintiff's Products in Home Depot stores from 2013 to 2019," and that "Plaintiff appears to admit this … where they state: 'Home Depot actually sold Alsa products in the past.'" *Id*. at 13, n.1. The Court nonetheless denied the motion because it was "a motion to dismiss, not summary judgment [and] must therefore treat Plaintiff's allegation that Home Depot never sold its products as true." *Id*.

The Court now has full and undisputed evidence before it: Alsa repeatedly lied to the Court and was in fact an enthusiastic online vendor on the Home Depot Website. SUF 88-90. Banoun, Alsa's principal and the person in charge of all Alsa operations (during the Vendor Period and now), admitted it agreed to the terms of the SBA and communicated with Home Depot repeatedly. SUF 77-83, 86.[6] All the Inactive Pages accurately informed visitors to the Home Depot Website that no Alsa products were available.

Thus, there can be no false association. The Court noted that the webpages explicitly stated that Home Depot is "not *currently* selling Alsa products," *but* Plaintiff denied that Home Depot *ever* sold Alsa products, making a false association claim plausible. Dkt. 60 at 13. Now, the evidence is properly before the Court and shows that Alsa products were sold on the Home Depot Website for years, with Alsa's

---

[6] Home Depot sent Alsa a sanctions letter on the subject on May 9, 2024 attaching such communications and imploring Alsa to stop advancing falsehoods. SUF 155-56. Weeks later, when Alsa admittedly had no reason to doubt that it was a Home Depot vendor, Alsa *still* denied that it was a Home Depot vendor. SUF 157-58.

9

blessing.  SUF 77-91.  Consistent with the Court's Order, "the subsection [11 U.S.C. § 1125(a)] as a whole suggests that the use [of a mark] must be deceptive or misleading." *Zamfir v. Casperlabs, LLC*, 528 F. Supp. 3d 1136, 1148 (S.D. Cal. 2021); *see also Jack Russell Terrier Network v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005) (stating "deceptive use of a trademark or its equivalent" is required to satisfy standing requirements for a false association claim).  Because the evidence has shown—and Alsa has finally admitted—that it was a Home Depot vendor and that the Inactive Pages were created as a result of that vendor relationship, Alsa's false association theory fails, and Home Depot is entitled to summary judgment.

### B.    Alsa's Trademark Infringement Claims Fail as a Matter of Law.

Even if Alsa's false association could survive, its infringement claims would still fail.  To prevail on a claim of trademark infringement, Alsa must prove (1) that it possesses a valid mark, (2) that Home Depot used that mark, (3) that such use was "in commerce," (4) that Home Depot used the mark "in connection with the sale…or advertising of any goods," and (5) that Home Depot used the mark in a manner likely to cause consumer confusion.  *See JUUL Labs, Inc. v. Chou*, 557 F. Supp. 3d 1041, 1051-1054 (C.D. Cal. 2021).  Alsa fails every one of these tests.

### 1.    Alsa Does Not Own Registered Rights.

To prove infringement, Alsa must first establish that it owns valid trademarks for each of the Alsa Marks.  *See Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927 (9th Cir. 2005).

As an initial matter, it is undisputed that that Alsa does not own any registrations for the purported Alsa Marks.  SUF 31-37.  Thus, Alsa is not entitled to a presumption that any of the purported Alsa Marks are valid—rather, that is something Alsa must prove.  15 U.S.C. §§ 1057(b), 1115(a).

Moreover, as to its purported Easy Chrome mark, it is undisputed (i) that Alsa is not the owner of that mark, and (ii) it not entitled to protection.

First, Mr. Banoun, not Alsa, is the listed owner of a trademark registration for Easy

10

Chrome. SUF 35. He admitted Alsa has no license for the Easy Chrome mark. SUF 38. Accordingly, the Court should grant Home Depot's motion with respect to the Easy Chrome mark because Alsa does not own it. *See JUUL*, 557 F. Supp. 3d at 1051-52.

Second, even if Alsa could somehow prove that it owns rights in Easy Chrome, Alsa cannot show that the Easy Chrome mark is protectable. A "generic" term is one that refers, or has come to be understood as referring, to a type of product. *Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.*, 601 F.2d 1011, 1014 (9th Cir. 1979). In other words, generic terms are "common descriptive names" for what the product is. *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 718 F.2d 327, 329 (9th Cir. 1983), *rev'd on other grounds*, 469 U.S. 189 (1985). A generic term cannot become a trademark under any circumstances. *Surgicenters*, 601 F.2d at 1014. A merely "descriptive" term describes a characteristic of a good. *Id.* Unlike a generic term which is not protectible, a descriptive term can become distinctive and protectible upon a showing of secondary meaning. *Id.*

The term "Easy Chrome" used to describe easy to apply chrome paint is at best descriptive without any evidence of secondary meaning. *See Art Attacks Ink, Ltd. Liab. Co. v. MGA Enter. Inc.*, 581 F.3d 1138, 1147 (9th Cir. 2009) (finding a reasonable jury could not have found that trade dress had acquired secondary meaning based solely on five years of use). Even significant sales and promotion will not render common terms protectable where the marks employ common terms. *See In Re Gen. Mills Ip Holdings II, LLC*, 124 U.S.P.Q.2d 1016 (T.T.A.B. 2017) (finding no secondary meaning despite over $4 billion in sales and significant advertising). The terms "easy" and "chrome" are dictionary terms. SUF 45-46. Moreover, Alsa has admitted that terms "easy" and "chrome" are generic and named the product Easy Chrome because it is easy to apply and chrome. SUF 43. Alsa has failed to proffer evidence to establish secondary meaning in the Alsa Marks, including a survey. SUF 40. Alsa spent only a few thousand dollars since 2019 marketing all of the Alsa Marks. SUF 48-54. Therefore, Alsa cannot establish Easy Chrome mark is protectable.

11

## 2.    Home Depot Does Not Use the Alsa Marks in Commerce.

Use of a trademark is a required element for trademark infringement, and, thus, an absence of use in commerce is an independent and sufficient basis to grant Home Depot summary judgment. *Walmart*, at \*23 (stating that infringement claims "are subject to a requirement of commercial use. For infringement claims, courts must consider whether the defendant's use was 'in connection with a sale of goods or services.'") (quoting *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005); *see also Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 925 F. Supp. 2d 1067, 1077 (C.D. Cal. 2012) (granting summary judgment and stating "Defendants' use does not indicate a source or origin of the products, and is therefore not a trademark use. A non-trademark use cannot be infringing, so Plaintiff's claims fail.").

Home Depot never made use in commerce of the Alsa Marks after the Vendor Period. SUF 95-99. Home Depot did not sell any products labeled with the Alsa Marks after the Vendor Period, and Alsa does not contend otherwise. Dkt. 25 ¶¶ 40-62; SUF 95, 118. Home Depot never sold accused products. Dkt. 25 ¶ 44 (alleging Home Depot does not sell Plaintiff's products). In fact, discovery did not reveal any "commercial" use of any of the Alsa Marks "in connection with a sale if goods or services" by Home Depot or otherwise on the Home Depot Website, and Alsa produces no documents to establish otherwise beyond one screenshot of an Inactive Page showing no products available for sale. SUF 95-99, 111-16. Similarly, during its deposition Alsa could not identify any Home Depot products bearing the Alsa Marks or similar trademarks. SUF 118.

Recently, this court in *Walmart* determined that just because "[a]ny user can produce this type of page by navigating to Walmart's website and typing a search term into the search box … this ability does not indicate the presence of use of infringing products," and Alsa had failed to "show that the alleged Marks appear anywhere else on Walmart.com apart from where they are inputted as search terms." *Walmart*, at \*6. Here too, Alsa's search of the Alsa Marks on Home Depot's website

to produce pages referencing the mark, but including no products, is insufficient as a matter of law to establish Home Depot is making commercial use of Alsa's Marks. *Id.* To the extent Alsa argues that Home Depot "used" the Alsa Marks via the Inactive Pages, this argument fails for the reasons stated in Section IV(A). Moreover, these Inactive Pages cannot constitute use in commerce because no products were sold or offered for sale on them. Indeed, there is no evidence that Home Depot made a *single* sale as a result of any visit to the Inactive Pages. SUF 94-95, 118.

Because Alsa provides no evidence Home Depot used the Alsa Marks, Alsa cannot raise a genuine dispute of material fact as to Home Depot's lack of trademark use. There must be more than "conclusory, speculative testimony," "bald assertions," or "a mere scintilla of evidence in [Alsa's] favor" to survive on summary judgment. *See Tekoh v. Cty. of L.A.*, 270 F. Supp. 3d 1163, 1168 (C.D. Cal. 2017). Alsa's infringement claim must fail, and summary judgment should be granted.

### 3. Home Depot is Entitled to Summary Judgment Because Alsa Cannot Establish a Likelihood of Confusion.

In the context of internet results, "the likelihood of confusion will ultimately turn on what the consumer saw on the screen and reasonably believed, given the context." *MTM*, 804 F.3d at 937 (cleaned up). Courts may grant summary judgment "without delving into any factors other than: (1) the type of goods and the degree of care likely to be exercised by the purchaser; and (2) the labeling and appearance of the products for sale and the surrounding context on the screen displaying the results page." *Walmart*, at *6 (citing *MTM*, 804 F.3d at 937); *see also Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1150-53 (9th Cir. 2011) (stating proximity of the goods, similarity of the marks, marketing channels and likelihood of expansion were "unimportant").[7]

---

[7] Generally, to determine whether likelihood of confusion exists, a Court relies on the eight relevant factors: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used;

13

Additionally, factors that might otherwise be relevant in other contexts are not relevant when assessing whether internet search results are infringing. Specifically, similarity of the marks, strength of plaintiff's mark, and the proximity of the goods are less important in internet search result cases. *Lerner & Rowe*, 119 F.4th at 725 (quoting *Network Automation*, 638 F.3d at 1150) ("if advertisements are clearly labeled or consumers exercise a high degree of care, … rather than being misled, the consumer would merely be confronted with choices among similar products.'"); *MTM*, 804 F.3d at 940 (finding strength and similarity of marks unimportant given the clear labeling of the source of products featured on Amazon's website and high degree of purchaser care).

### a.    The Relevant Consumers Are Professionals, and the Goods are Expensive.

Alsa's consumers are professionals who purchase expensive goods and are not likely to be confused. SUF 19-29. In the context of the internet, one of the most relevant factors to consider are the "type of goods and degree of care" of the purchaser. *MTM*, 804 F.3d at 935. While generally courts consider the "typical buyer exercising ordinary caution," in the context of online shopping, "the default degree of consumer care is becoming more heightened as the novelty of the Internet evaporates and online commerce becomes commonplace." *Id.* at 937 (holding online shoppers are typically savvy enough to differentiate between search engine results). "Unreasonable, imprudent and inexperienced web-shoppers are not relevant." *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1176 (9th Cir. 2010). And consumers seeking "high-value products are likely to exercise a higher degree of care while shopping and are, therefore, less likely to be confused by similar marks." *Lerner & Rowe*, 119 F.4th at 722 (quoting *Network Automation*, 638 F.3d at 1152).

(6) types of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979).

14

Likewise, when "goods are expensive, [a] buyer can be expected to exercise greater care." *Network Automation*, 638 F.3d at 1152.

Recently, this Court in *Walmart* addressed the likely consumers of Alsa's products and determined that online shoppers here "are likely to exercise greater care" as Alsa's Easy Chrome paint "ranges from $59.00 to $3,999.00." *See Walmart*, at *5, 7 (citing *MTM*, 804 F.3d at 937); SUF 20.[8] Alsa's products are "specialized or even 'sophisticated' items rather than everyday goods." *Walmart*, at *7; SUF 28. Alsa considers its product "niche," often sold to consumers as kits with other Alsa products, because applying the correct Alsa base coat yields better results. SUF 23-24. Each of the Alsa products is sold in packaging bearing one of the Alsa Marks. SUF 27.

Here, the cost and purpose of Alsa's products—to paint expensive items, like cars—means that consumers exercise a higher degree of care than the general internet purchasers. SUF 19-29. Additionally, such specialty paint users would be expected to know that paint used on cars and paint intended for wood or metal are not interchangeable. SUF 117. Such consumers are accustomed to looking for details to ensure the product meets the specific purpose. *Lerner & Rowe*, 119 F.4th at 722.

The heightened care these consumers take, along with expectations of search result norms, make clear that no consumer is likely to be confused. *See MTM*, 804 F.3d at 938 ("The search results page makes clear to anyone who can read English that Amazon carries only the brands that are clearly and explicitly listed on the web page."). Thus, the sophistication of relevant purchasers and high-degree of care for these products supports finding no likelihood of confusion as a matter of law.

### b. Home Depot Search Results Are Clearly Labeled.

The second factor especially relevant when evaluating alleged trademark infringement in the internet context is "the labeling and appearance of the

---

[8] Alsa has increased the price of its products, and it is typical for a sale of Alsa products under the Alsa Marks to exceed hundreds of dollars. SUF 21-22.

15

advertisements and the surrounding context on the screen displaying the results page." *MTM*, 804 F.3d at 936. While not part of the traditional *Sleekcraft* test, this factor is "particularly important" in cases involving online search results. *Id.* Because "[t]he core element of trademark infringement is whether the defendant's conduct is likely to confuse customers about the source of the products," if "a court can conclude that the consumer confusion alleged by the trademark holder is highly unlikely by simply reviewing the product listing/advertisement at issue, summary judgment is appropriate." *MTM*, 804 F.3d at 933, 939; *see also Network Automation*, 638 F.3d at 1154 ("The labeling and appearance of the advertisements as they appear on the results page includes more than the text of the advertisement, and must be considered as a whole.")

The Ninth Circuit's discussion of the importance of labeling in *Multi Time Machine, Inc. v. Amazon.com, Inc.* is instructive. In affirming summary judgment in Amazon's favor, the Ninth Circuit reasoned that the non-infringement finding was appropriate, in part, because the labeling of the products was clear. 804 F.3d at 937-38. There, plaintiff's claims concerned Amazon search results generated when a user types in one of plaintiff's trademarks. *Id.* The resulting searches did not show plaintiff's products but exclusively showed third party products that were each identified by the product's respective name. *Id.* The court concluded the "the labeling and appearance of the products for sale," was the "most important factor" because "clear labeling can eliminate the likelihood of initial interest confusion in cases involving Internet search terms." *Id.* at 937.

As in *MTM*, the Alsa Results are clearly labeled and appear below Home Depot's logo and other branding, making it clear to consumers that Home Depot does not sell Alsa's products. SUF 15-16. The results page only informs users how many results are returned from that user's search. SUF 111-17. Like *MTM*, no Alsa products or marks are displayed in Home Depot's Search Results. *Id.* Instead, the Search Results show alternative products, that are each clearly labeled with the

16

relevant product's trademarks. *Id.* Home Depot's "search results page makes clear to anyone who can read English that [Home Depot] carries only the brands that are clearly and explicitly listed on the web page." *See MTM*, 804 F.3d at 938. When a defendant's website search results provide clearly labeled alternative products, as Home Depot does here, this is akin to "someone walk[ing] into a diner, ask[ing] for a Coke, and [being] told 'No Coke. Pepsi.'" *Id.* In both cases, the consumer may choose the alternative product, but the consumer is well aware that it is a substitution. Identical facts exist here. SUF 111-17.

Therefore, Home Depot's clear labeling of search results favors finding no likelihood of confusion.

### c. The Other Likelihood of Confusion Factors Favor Home Depot.

#### i. *The Weakness of Alsa's Marks Favors No Confusion*

While the strength of Alsa's Marks is irrelevant because Home Depot clearly labels the source of the products featured on its website, the weakness of the Alsa Marks, if considered at all, supports granting summary judgment in Home Depot's favor. *See MTM*, 804 F.3d at 940 (stating factor is irrelevant); *Aliign Activation Wear, LLC v. lululemon athletica Canada Inc.*, 2021 WL 3117239, at *3 (C.D. Cal. June 7, 2021) (Wilson, J.), *aff'd*, 2022 WL 3210698 (9th Cir. Aug. 9, 2022) (discussing strength of a mark in terms of conceptual and commercial strength). A mark's "strength" is evaluated both conceptually and commercially. *See Stark v. Diageo Chateau & Est. Wines Co.*, 907 F. Supp. 2d 1042, 1058 (N.D. Cal. 2012). Here, as discussed *supra* Section IV(B)(1), Alsa failed to provide any credible evidence of the validity—much less the conceptual or commercial strength—of its Alsa Marks. As addressed above, the Easy Chrome mark is not protectable. *See supra* Section IV(B)(1). Even assuming, arguendo, that "Alsa" is a conceptually strong term, the only record evidence suggests that Alsa's sales of products bearing the Alsa Marks

17

have been sparse.  Alsa failed to submit any meaningful evidence of its revenues. SUF 66-69, 91, 153-54; *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp*., 174 F.3d 1036, 1058 (9th Cir. 1999) (use of mark for over five years and $100,000 in advertising expenditures not substantial evidence of "widespread recognition"); *Sazerac Co., Inc. v. Fetzer Vineyards, Inc*. is instructive. 265 F. Supp. 3d 1013, 1036 (N.D. Cal. 2017), *aff'd*, 786 F. App'x 662 (9th Cir. 2019) (despite "continuous and exclusive use of the marks, its sales of millions of bottles of bourbon bearings the marks, its extensive advertising using the marks, and awards associated with the brand," the court found that the alleged trade dress was not commercially strong). Thus, the commercial strength of the Alsa Marks is low.  Accordingly, this factor is at best neutral, or shows that confusion is unlikely.

### ii.      *There is No Evidence of Actual Confusion*

Despite years of alleged infringement, Alsa offered no credible evidence of actual confusion.  A "lack of evidence about actual confusion after an ample opportunity for confusion can be a powerful indication that the junior trademark does not cause a meaningful likelihood of confusion."  *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1093 (C.D. Cal. 2003). "Lack of actual confusion during such a substantial period of concurrent use … establishes there is no likelihood of confusion." *Am. Int'l Grp., Inc. v. Am. Int'l Bank,* 926 F.2d 829, 835 (9th Cir. 1991).  Therefore, here, the "only the '[u]nreasonable, imprudent and inexperienced web-shoppers' who might find the search results pages confusing." *Lerner & Rowe*, 119 F.4th at 719, 725 (citing *Tabari*, 610 F.3d at 1176)[9]

---

[9] Significantly higher levels of alleged actual confusion have been found *de minimis*. *Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1026 (9th Cir. 2004) (236 instances of alleged actual confusion); *Punchbowl, Inc. v. AJ Press LLC*, 2024 WL 4005220, at *11 (C.D. Cal. Aug. 22, 2024) (Wilson, J.) (100 instances of confusion were *de minimis*).

18

Alsa admits that it could not name any specific lost customers, nor did it have knowledge of any lost sales based on Home Depot's alleged use of the Alsa Marks after January 1, 2019. SUF 137. Alsa has produced only two documents which purportedly show confusion: two posts on online forums for vehicle enthusiasts asked: "Has anyone used the following Alsa Refinish chrome spray kit available at Home Depot?" and "Home Depot link says from Alsa … Says out of stock online." SUF 120-22. However, these documents are irrelevant because the dates fall squarely in the Vendor Period when Home Depot offered the Alsa products. *Id.*; *see Novalogic, Inc. v. Activision Blizzard*, 41 F. Supp. 3d 885, 897 (C.D. Cal. 2013) (critiquing similar posts as unreliable and hearsay).

### iii.    The Marketing Channels Are Irrelevant

This factor does not carry weight in the internet context, "given the broad use of the internet today." *Playboy Enterprises*, 354 F.3d at 1028 (according little weight to the marketing channels factor where both parties use the internet as their marketing channel); *Network Automation*, 638 F.3d at 1151 (It is "the rare commercial retailer that [does] not advertise online, and the shared use of a ubiquitous marketing channel" is not particularly significant in the analysis.). Here, relevant channel is the internet (SUF 3, 18) and, thus this factor does not favor Alsa.

### iv.    Home Depot's Intent

Home Depot did not seek to capitalize on the goodwill in the Alsa Marks. When considering defendant's intent, the relevant question is whether it "intended to profit by confusing consumers." *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 791 n.2 (9th Cir. 1981); *see Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1043 (9th Cir. 2010). Home Depot does not use the Alsa Marks on its website, does not offer Alsa products for sale, and all the Alsa Results are clearly marked. *Supra* Sections IV(B)(2) & IV(B)(3)(b); SUF 95. Home Depot does not advertise any of Alsa's products or use the Alsa Marks in advertising. SUF96-99, 111-17. Instead, Home Depot accurately informs consumers searching

19

for Alsa's products that there are none.  *See MTM*, 804 F.3d at 940 (holding clearly labeled search results weigh against intentional confusion).  This factor favors finding no confusion.

### C.      Alsa's Related Claims Likewise Fail as a Matter of Law.

Because Alsa cannot establish a likelihood of confusion, all of its claims fail.[10] Dkt. 25 at 11-20; *see also Walmart*, 2024 WL 3914512, at *9 (collecting cases and dismissing Alsa's claims).  Therefore, the Court must grant summary judgment for Home Depot on Alsa's remaining claims.

### D.      Alsa Cannot Seek Equitable Disgorgement of Home Depot's Profits.

Alsa seeks to disgorge Home Depot's profits for its entire paint business.  SUF 152. A court may disgorge only those profits with a nexus to the defendant's infringement. *See Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 124 (9th Cir. 1968) ("The plaintiff of course is not entitled to profits demonstrably not attributable to the unlawful use of his mark." (quoting *Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co.*, 316 U.S. 203, 206 (1942))).  "An award of profits is not automatic upon a finding of infringement." *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1073 (9th Cir. 2015).  Alsa has the burden of proof to show with "reasonable certainty" a defendant's gross sales from *infringing* activity. *See Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 712 (9th Cir. 1999) (affirming denial of damages not adequately calculated based on allegedly infringing products). "[A]n accounting [i.e., an award of defendant's profits] is intended to award profits only on sales that are *attributable to the infringing conduct*." *Lindy Pen*, 982 F.2d at 1408 (emphasis added).  Alsa has not met its burden to show that *any* disgorgement of Home Depot's profits would be equitable or appropriate here.  Alsa admits that all the losses claimed in this lawsuit are attributable to the end

[10] Home Depot successfully moved to dismiss Alsa's dilution claims.  Dkt. 33.

20

of the vendor relationship with Home Depot, *not* to any infringement. SUF 109.

Alsa seeks entirely speculative profits based on calculations using numbers pulled out of thin air—rather than any basis approaching a nexus to the infringement that is calculated with reasonable certainty. *See* SUF 151 (claiming $157 million based on its back-of-the-napkin estimate of Home Depot's paint sales); SUF 144 (an "enhanced royalty rate" applied to Home Depot's sales of paint since 2019); SUF 150 ("Alsa is claiming 1% of HD sales during the period for said products."). Yet, Alsa has no previous royalty on which to base this. SUF 145, 154.

Home Depot did not sell a single product bearing an Alsa Mark after the Vendor Period. Accordingly, there are no revenues attributable to the allegedly infringing conduct—much less profits from those sales. SUF 95, 118. Accordingly, the Court should find that Alsa is not entitled to seek an equitable disgorgement of Home Depot's profits.

### E. Alsa is Not Entitled to Any Other Form of Damages.

Just like equitable disgorgement, Alsa's prayer for other damages fails. Dkt. 25 at 20-21. A trademark infringement plaintiff must establish compensatory damages with reasonable certainty. *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1405 (9th Cir. 1993). Alsa utterly fails to meet its evidentiary burden here and, therefore, a finding of no damages as a matter of law is appropriate. *Id*. ("Damages are typically measured by any direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned but for the infringement"); *see also Pogrebnoy v. Russian Newspaper Distribution, Inc.*, 289 F. Supp. 3d 1061 (C.D. Cal. 2017), *aff'd*, 742 F. App'x 291 (9th Cir. 2018) (finding that plaintiff had not satisfied his evidentiary burden to establish that he has suffered any actual damages because he did not provide evidence of consumer confusion, deception, or lost sales).

Alsa cannot point to any lost sales, nor can it identify the name of a single lost customer resulting from Home Depot's purported infringement. SUF 137-38. Instead, Alsa relies on unsupported claims that it "has lost millions of dollars in sales,

21

and may not be able to survive as a business," and unsubstantiated costs related to "correcting consumer misconceptions." SUF 142. Alsa has not provided any evidence that forms the basis of these calculations. SUF 154. Instead, Alsa ignores the well-recognized principle that requires a trademark infringement plaintiff to offer "a reasonable basis for computation." *Quia Corp. v. Mattel, Inc.*, 2011 WL 2749576, at *4 (N.D. Cal. July 14, 2011). Alsa admits that it has not provided evidence showing a decline in sales and conceded that it has no evidence of harm, lost customers, or lost profits attributable to the historical webpages. Dkt. 25 ¶ 63; SUF 66-69, 137-38, 153-54. Accordingly, summary judgment of no damages as a matter of law is appropriate.

## V. **CONCLUSION**

For the foregoing reasons, the Court should grant Home Depot's motion for summary judgment on all claims.

Dated: February 21, 2025

**DLA PIPER LLP (US)**

By: */s/ Oscar M. Orozco-Botello*
Oscar M. Orozco-Botello (SBN 313104)
2000 Avenue of the Stars
Suite 400, North Tower
Los Angeles, California 90067
T. 310.595.3000 | F. 310.595.3300
oscar.orozco-botello@us.dlapiper.com

Tamar Y. Duvdevani (*Pro Hac Vice*)
1251 Avenue of the Americas
27th Floor New York, NY 10020-1104
T. 212.335.4799
tamar.duvdevani@us.dlapiper.com

Jane W. Wise (*Pro Hac Vice*)
500 Eighth Street, NW
Washington, DC 20004
T. 202.799.4149
jane.wise@us.dlapiper.com

*Attorneys for Counterclaimant Home Depot U.S.A., Inc. (incorrectly named The Home Depot, Inc.)*

23

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Home Depot, certifies that this brief contains 6,990 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 21, 2025      **DLA PIPER LLP (US)**

By: */s/ Oscar M. Orozco-Botello*
Oscar M. Orozco-Botello